IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA

| | | |
|---|---|---|
| James H. Singletary, | ) | C/A No. 0:11-543-CMC-PJG |
|          Plaintiff, | ) | |
| vs. | ) | **REPORT AND RECOMMENDATION** |
| Assistant Warden Fallen; Doctor Blocker; Administrator Rosario, all in their individual capacities, | ) ) ) | |
|          Defendants. | ) | |

The plaintiff, James H. Singletary ("Singletary"), a self-represented federal prisoner, filed this action[1] seeking injunctive relief compelling certain medical treatment. This matter is before the court pursuant to 28 U.S.C. § 636(b) and Local Civil Rule 73.02(B)(2) DSC for a Report and Recommendation on the defendants' motion to dismiss or, in the alternative, for summary judgment. (ECF No. 31.) By order of this court filed pursuant to Roseboro v. Garrison, 528 F.2d 309 (4th Cir. 1975), the plaintiff was advised of the dismissal and summary judgment procedures and the possible consequences if he failed to respond adequately. (ECF No. 32.) Singletary filed a response in opposition to the defendants' motion. (ECF No. 42.) Having carefully considered the parties' submissions and the applicable law, the court finds that the defendants' motion for summary judgment should be granted.

---

[1] The plaintiff originally submitted his complaint on a form used for a petition for a writ of habeas corpus under 28 U.S.C. § 2241. However, the court determined during initial review that the plaintiff had not raised claims challenging the legality or duration of his custody, and directed the plaintiff to complete a federal prisoner complaint form. (See Order, ECF No. 6.)



## BACKGROUND

Singletary's Complaint alleges that the defendants were deliberately indifferent to his medical needs with regard to various pains in his feet and right toe. The crux of Singletary's Complaint appears to be that Defendants Blocker and Rosario denied Singletary the "full extent of medical avenues available" in that they did not allow him to see a podiatrist and did not recommend or authorize an MRI to be performed on Singletary's foot, which had been causing him repeated pain and which he alleges had not responded to other forms of treatment. (Compl., ECF No. 1-4 at 4.) Singletary contends that the defendants denied him an MRI, which he believes will show that he has been misdiagnosed. (Id. at 5.) Singletary further alleges that Assistant Warden Fallen was deliberately indifferent in that he was responsible for the prison medical staff and should have ordered them to perform an MRI on Singletary's foot. (Id. at 4.) Singletary requests that he be examined by a podiatrist outside of the prison system. (Id. at 7.)

## DISCUSSION

**A.     Subject Matter Jurisdiction**

    **1.     12(b)(1) Motion to Dismiss Standard**

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(1) examines whether the complaint fails to state facts upon which jurisdiction can be founded. It is the plaintiff's burden to prove jurisdiction, and the court is to "regard the pleadings' allegations as mere evidence on the issue, and may consider evidence outside the pleadings without converting the proceeding to one for summary judgment." Richmond, Fredericksburg & Potomac R.R. Co. v. United States, 945 F.2d 765, 768 (4th Cir. 1991). To resolve a jurisdictional challenge under Rule 12(b)(1), the court may consider undisputed facts and any jurisdictional facts that it determines. The court may dismiss a



case for lack of subject matter jurisdiction on any of the following bases: "(1) the complaint alone; (2) the complaint supplemented by undisputed facts evidenced in the record; or (3) the complaint supplemented by undisputed facts plus the court's resolution of disputed facts." Johnson v. United States, 534 F.3d 958, 962 (8th Cir. 2008) (quoting Williamson v. Tucker, 645 F.2d 404, 413 (5th Cir. 1981)).

### 2.      Nature of Singletary's Suit

As an initial matter, the defendants assert that the court lacks subject matter jurisdiction over Singletary's claims because of the doctrine of sovereign immunity. They contend that Singletary cannot pursue his claims against the defendants in their official capacities because as representatives of the sovereign, they are immune from suit. See Kentucky v. Graham, 473 U.S. 159, 165 (1985) (holding that an official capacity suit "generally present[s] only another way of pleading an action against an entity of which an officer is an agent" and "is, in all respects other than name, to be treated as a suit against the entity") (internal quotations omitted). In the landmark case of Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics, 403 U.S. 388, 397 (1971),[2] the United States Supreme Court established a remedy for plaintiffs alleging constitutional violations by federal officials to obtain monetary damages in suits against federal officials in their individual capacities. Id. Based on Bivens, courts have recognized that neither federal agencies nor federal officials in their official capacities can be sued for monetary damages in a Bivens action. Federal Deposit Ins.

---

[2] In Bivens, the United States Supreme Court established a direct cause of action under the Constitution of the United States against federal officials for the violation of federal constitutional rights. A Bivens claim is analogous to a claim brought against state officials under 42 U.S.C. § 1983; therefore, case law involving § 1983 claims is generally applicable in Bivens actions. See Harlow v. Fitzgerald, 457 U.S. 800, 814-20, n. 30 (1982); see also Farmer v. Brennan, 511 U.S. 825 (1994).



Corp. v. Meyer, 510 U.S. 471 (1994) (holding that a Bivens action cannot lie against a federal agency); Doe v. Chao, 306 F.3d 170, 184 (4th Cir. 2002) (observing that "a Bivens action does not lie against either agencies or officials in their official capacity"); Randall v. United States, 95 F.3d 339, 345 (4th Cir. 1996) ("Any remedy under Bivens is against federal officials individually, not the federal government.").

Thus, pertinent here, Bivens and its progeny establish that (1) federal officials can be held liable for damages in their individual capacities and (2) federal officials cannot be held liable for damages in their official capacities. These teachings from Bivens do not wholly resolve this case, however, because Singletary appears to be seeking only injunctive relief.

The inquiry is complicated by the fact that although Singletary has expressly sued the defendants in their individual capacities, he is seeking injunctive relief via an order from the court directing them to provide him specific medical treatment. This form of relief is not available against the defendants in their individual capacities. See, e.g., Kirby v. City of Elizabeth City, N.C., 388 F.3d 440, 452 n.10 (4th Cir. 2004) (stating that injunctive relief sought by the plaintiff could only be awarded against the officers in their official capacities); Cmty. Mental Health Servs. of Belmont v. Mental Health & Recovery Bd., 150 F. App'x 389, 401 (6th Cir. 2005) ("[A] plaintiff should not be able to sue a defendant in his individual capacity for an injunction in situations in which the injunction relates only to the official's job, *i.e.*, his official capacity.").

Thus, it appears that what Singletary actually seeks through this action is injunctive relief against the defendants in their official capacities.[3] Liberally construing Singletary's suit as such, a

---

[3] In fact, the defendants have construed his Complaint thusly as well. However, for the reasons stated herein, whichever way Singletary's suit is construed, his claims fail as a matter of law.



threshold question is whether sovereign immunity protects federal officials from a suit naming them in their official capacities when injunctive relief rather than damages is sought. The answer is no. Erwin Chemerinsky, Federal Jurisdiction § 9.2.2 (5th ed. 2007) ("An extremely important and well-established exception to the principle of sovereign immunity is that suits [seeking injunctions] against government officers are not barred.").

It has long been recognized that federal courts have authority to grant equitable relief to restrain constitutional violations or *ultra vires* conduct. See Bivens, 403 U.S. at 400 (observing the existence of "the presumed availability of federal equitable relief, if a proper showing can be made in terms of the ordinary principles governing equitable remedies") (Harlan, J., concurring); Bell v. Hood, 327 U.S. 678, 684 (1946) ("[W]here federally protected rights have been invaded, it has been the rule from the beginning that courts will be alert to adjust their remedies so as to grant the necessary relief."); see also Larson v. Domestic & Foreign Commerce Corp., 337 U.S. 682 (1949) (noting that sovereign immunity does not protect federal officials acting outside their authority). Moreover, courts have specifically recognized that Congress has expressly waived sovereign immunity of federal officials in certain actions seeking injunctive relief. See Simmat v. United States Bureau of Prisons, 413 F.3d 1225 (10th Cir. 2005); Raz v. Lee, 343 F.3d 936 (8th Cir. 2003). In Simmat, for example, a case similar to the one at bar, the court held that it had subject matter jurisdiction based upon 28 U.S.C. § 1331 over a prisoner's Eighth Amendment claim asserting deliberate indifference to medical needs and seeking injunctive relief against prison officials in their official capacities. Additionally, 28 U.S.C. § 1361 expressly confers jurisdiction upon the district courts over mandamus actions "to compel an officer or employee of the United States or any agency thereof to perform a duty owed to the plaintiff." Id.; see also Simmat, 413 F.3d at 1234. Similarly,

5 U.S.C. § 702 provides: "An action in a court of the United States seeking relief other than monetary damages and stating a claim that an agency or an officer or employee thereof acted or failed to act in an official capacity or under color of legal authority shall not be dismissed nor relief therein be denied on the ground that it is against the United States . . . ." This provision, although contained within the federal Administrative Procedures Act, has been applied in civil rights actions. See, e.g., Presbyterian Church v. United States, 870 F.2d 518, 524-25 (9th Cir. 1989) (holding that § 702 waived sovereign immunity in an action seeking injunctive relief for alleged First and Fourth Amendment violations); Clark v. Library of Congress, 750 F.2d 89, 102 (D.C. Cir. 1984) (holding that § 702 "eliminated the sovereign immunity defense in virtually all actions for non-monetary relief against a U.S. agency or officer acting in an official capacity"). As one commentator observes, the text of § 702 is clear:

> The United States has waived its sovereign immunity in suits requesting other than monetary relief. Thus, federal court suits for injunctive and declaratory relief are permitted, either against federal officers or directly against the United States government. This is a major exception to the doctrine of sovereign immunity because it allows the judiciary, assuming all other jurisdictional requirements are met, to halt illegal government conduct.

Chemerinsky, supra, § 9.2.2. Thus, because Singletary appears to seek only injunctive relief against the defendants in their official capacities, and because his Eighth Amendment claim raises a federal question, the court finds that it has jurisdiction over Singletary's suit for injunctive relief. See Simmat, 413 F.3d 1225 (finding jurisdiction lies under § 1331 or § 1361).

B.  **Summary Judgment**

1.  **Standard**

Summary judgment is appropriate only if the moving party "shows that there is no genuine dispute as to any material fact and the [moving party] is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  A party may support or refute that a material fact is not disputed by "citing to particular parts of materials in the record" or by "showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact."  Fed. R. Civ. P. 56(c)(1).  Rule 56 mandates entry of summary judgment "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case."  Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).

In deciding whether there is a genuine issue of material fact, the evidence of the non-moving party is to be believed and all justifiable inferences must be drawn in favor of the non-moving party. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986).  However, "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment.  Factual disputes that are irrelevant or unnecessary will not be counted." Id. at 248.

The moving party has the burden of proving that summary judgment is appropriate.  Once the moving party makes this showing, however, the opposing party may not rest upon mere allegations or denials, but rather must, by affidavits or other means permitted by the Rule, set forth specific facts showing that there is a genuine issue for trial.  See Fed. R. Civ. P. 56(c), (e); Celotex Corp., 477 U.S. at 322.  Further, while the federal court is charged with liberally construing a complaint filed by a *pro se* litigant to allow the development of a potentially meritorious case, see,

e.g., Cruz v. Beto, 405 U.S. 319 (1972), the requirement of liberal construction does not mean that the court can ignore a clear failure in the pleadings to allege facts which set forth a federal claim, nor can the court assume the existence of a genuine issue of material fact where none exists. Weller v. Dep't of Soc. Servs., 901 F.2d 387 (4th Cir. 1990).

### 2.     Deliberate Indifference—Medical Treatment

Singletary is not entitled to the injunctive relief he seeks. To establish a claim under the Eighth Amendment for deliberate indifference to medical needs, an inmate must establish two requirements: (1) a sufficiently serious deprivation occurred, resulting "in the denial of the minimal civilized measure of life's necessities," and (2) the prison official had a sufficiently culpable state of mind. Farmer v. Brennan, 511 U.S. 825, 834 (1994). To satisfy the second prong, an inmate must show that the prison official's state of mind was "deliberate indifference" to the inmate's health and safety. Id. A prison official is deliberately indifferent if he has actual knowledge of a substantial risk of harm to an inmate and disregards that substantial risk. Id. at 847; Parrish v. Cleveland, 372 F.3d 294, 302 (4th Cir. 2004). To be liable under this standard, the prison official "must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." Farmer, 511 U.S. at 837.

Furthermore, not "every claim by a prisoner [alleging] that he has not received adequate medical treatment states a violation of the Eighth Amendment." Estelle, 429 U.S. at 105. To establish deliberate indifference, the treatment "must be so grossly incompetent, inadequate or excessive as to shock the conscience or to be intolerable to fundamental fairness." Miltier v. Beorn,

PJG

896 F.2d 848, 851 (4th Cir. 1990). Mere negligence, malpractice, or incorrect diagnosis is not actionable under 42 U.S.C. § 1983. See Estelle, 429 U.S. at 106. While the Constitution requires a prison to provide inmates with medical care, it does not demand that a prisoner receive the treatment of his choice. Jackson v. Fair, 846 F.2d 811, 817 (1st Cir. 1988). "[A] prisoner's mere difference of opinion over matters of expert medical judgment or a course of medical treatment fail[s] to rise to the level of a constitutional violation." Nelson v. Shuffman, 603 F.3d 439, 449 (8th Cir. 2010) (internal quotation marks and citation omitted) (alterations in original); see also Wright v. Collins, 766 F.2d 841, 849 (4th Cir. 1985).

A prisoner's disagreement as to the appropriate treatment fails to rise to the level of a constitutional claim and fails to create a genuine issue of material fact. See Nelson, 603 F.3d at 449; see also O'Connor v. Pierson, 426 F.3d 187, 202 (2d Cir. 2005) ("Lay people are not qualified to determine . . . medical fitness, whether physical or mental; that is what independent medical experts are for."); Dulany v. Carnahan, 132 F.3d 1234, 1240 (8th Cir. 1997) ("In the face of medical records indicating that treatment was provided and physician affidavits indicating that the care provided was adequate, an inmate cannot create a question of fact by merely stating that she did not feel she received adequate treatment."); Fleming v. Lefevere, 423 F. Supp. 2d 1064, 1070 (C.D. Cal. 2006) ("Plaintiff's own opinion as to the appropriate course of care does not create a triable issue of fact because he has not shown that he has any medical training or expertise upon which to base such an opinion.").

Singletary has failed to provide any evidence from which a reasonable jury could find deliberate indifference to his medical needs. Singletary's Complaint alleges that despite his repeated complaints to medical staff regarding foot pain, his medical treatment has been delayed, his pain has

been misdiagnosed, and he has been refused outside treatment—specifically his request to see a podiatrist. The record contains no support for Singletary's assertions. In support of their motion for summary judgment, the defendants have provided Singletary's medical records which show that Singletary was seen repeatedly for his complaints of pain in his feet and right big toe. (See generally Medical Records, ECF No. 31-3.) The defendants have also provided a declaration from Dr. Blocker stating that Singletary was provided effective and adequate medical treatment for his foot problems and summarizing Singletary's treatment history. (See generally Blocker Decl., ECF No. 31-2.)

     A review of the medical records shows that Singletary first complained of pain in his right foot on June 11, 2008. (ECF No. 31-3 at 1-3.) Although Singletary stated at that time that his foot had been hurting for three months, he denied any recent trauma or injury. (Id.) Dr. Blocker ordered an x-ray of Singletary's right foot which showed no abnormalities. (Id. at 4.) A follow-up appointment was scheduled for September 19, 2008; however, Singletary did not appear for his scheduled appointment until after he was paged and told to report. (Id. at 6.) Singletary's appointment was rescheduled for September 29, 2008. During this appointment, Singletary complained of right foot pain at a level of 8 out of 10, and Dr. Blocker examined and diagnosed a possible heel spur, plantar fascilitis, or factitious pain. (Id. at 8.) Dr. Blocker discussed a treatment plan with Singletary which consisted of stretching exercises and non-steroid pain medication and again scheduled a three-month follow-up appointment. (Id.; see also Blocker Decl. ¶ 3D, ECF No. 31-2 at 3.) At his next appointment on January 9, 2009, Singletary rated his right foot pain at a level of 2 out of 10. (ECF No. 31-3 at 15-16.) Dr. Blocker's examination of Singletary's right foot was normal and he advised Singletary to use shoe inserts. (Id.; see also Blocker Decl. ¶ 3E; ECF No. 31-2 at 3.)

Singletary's medical records do not reveal any further complaints with regard to his foot until May 12, 2009, when he reported for an emergency encounter stating that he had burning pain in the arch of his *left* foot. (ECF No. 31-3 at 21-22.) Singletary was given a pass to wear medical shoes and instructed to follow-up at sick call as needed. (Id.) Singletary was seen again by Dr. Blocker on July 2, 2009 at which time he reported that he had injured his left foot six months earlier. (Id. at 24-26.) Dr. Blocker's examination revealed tenderness to the second tendon on the plantar surface of Singletary's left foot, but Dr. Blocker noted that Singletary's subjective tenderness appeared out of proportion to the examination's findings. (Id.; Blocker Decl. ¶ 3G; ECF No. 31-2 at 4.) Dr. Blocker also discussed in detail with Singletary foot pain management and advised him to purchase arch supports and to use the rehabilitation exercises previously prescribed to him. (Id.) Singletary sought medical care again on September 8, 2009, at which time he complained of chronic left foot pain. (ECF No. 31-1 at 28-29.) He reported that he had stopped taking pain medication. (Id.) An x-ray of Singletary's left foot was performed and revealed spurring involving the plantar surface of the heel. (Id. at 30.) At Singletary's October 2, 2009 appointment, Singletary again complained of left foot pain. (Id. at 32-34.) At that time, heel cups were ordered for Singletary to help alleviate his foot discomfort. (Id.)

Singletary reported to sick call on November 24, 2009 complaining of foot pain in both of his feet and requesting an x-ray for his right foot. (Id. at 40-41.) Singletary rated his pain as a 4 out of 10. Medical staff noted that Singletary did not appear to be in distress and was walking normally. (Id.)

On December 15, 2009, Singletary reported to sick call complaining of pain in his right big toe. (Id. at 44-45.) During this appointment, Singletary complained that his toe had been hurting

for six months but denied injuring it. (Id.) An x-ray of Singletary's right foot revealed no abnormalities. (Id. at 46.)

Singletary complained of pain in both feet at his next appointment on January 8, 2010, at which time Dr. Blocker administered a steroid injection in Singletary's right heel. (Id. at 47-50.) Singletary reported to sick call on February 23, 2010 requesting surgery for the bone spurring in his left heel. (Id. at 54-55.) Dr. Blocker was consulted and determined that surgery was not medically indicated at that time. (Blocker Decl. ¶ 3M, ECF No. 31-2 at 6.)

Singletary was seen by Dr. Blocker for several additional appointments during which he complained of foot pain and requested to be seen by a podiatrist. (Id. at 66-96.) Dr. Blocker's examinations found Singletary's pain to be out of proportion with the findings of his physical examinations and, on more than one occasion, noted that it appeared that Singletary was malingering. (Id.; see also Blocker Decl. ¶¶ 3O-S; ECF No. 31-2 at 7-8.) Singletary also reported at his July 22, 2011 appointment that he had not been exercising as previously directed and no longer had the heel cups that had been given to him. (ECF No. 31-3 at 91-93.) Dr. Blocker diagnosed Singletary with possible gout on his right big toe and issued Singletary a new pair of heel cups. (Id.)

Thus, Singletary's claim of deliberate indifference to a serious medical need fails because the record unequivocally shows that Singletary was repeatedly seen and treated by medical staff numerous times for his complaints regarding both of his feet and his right toe. Moreover, as stated above, Singletary does not have a claim against the defendants merely because it appears he disagrees with the course of treatment he received. See Jackson, 846 F.2d at 817; Nelson, 603 F.3d at 449; see also O'Connor, 426 F.3d at 202; Dulany, 132 F.3d at 1240; Fleming, 423 F. Supp. 2d at

1070. At most, Singletary's claims allege negligence or medical malpractice, which is not actionable in a constitutional claim. See Daniels v. Williams, 474 U.S. 327, 328-36 & n.3 (1986); Pink v. Lester, 52 F.3d 73, 78 (4th Cir. 1995) ("The district court properly held that Daniels bars an action under § 1983 for negligent conduct."); Ruefly v. Landon, 825 F.2d 792, 793-94 (4th Cir. 1987); see also Estelle, 429 U.S. at 106 ("Medical malpractice does not become a constitutional violation merely because the victim is a prisoner.").

### 3. Non-medical personnel

Additionally, to the extent that Singletary attempts to raise a claim of medical deliberate indifference against Defendants Fallen and Rosario, his claim must fail. To establish a claim for denial of medical care against non-medical personnel, a prisoner must show that they failed to promptly provide needed medical treatment, deliberately interfered with prison doctors' treatment, or tacitly authorized or were indifferent to the prison physicians' misconduct. Miltier v. Beorn, 896 F.2d 848, 854 (4th Cir. 1990). Moreover, because most prison officials are not trained medical personnel, they are entitled to rely on the opinions, judgment, and expertise of medical personnel concerning the course of treatment which the medical personnel deemed necessary and appropriate for the prisoner. See id. Defendants Fallen and Rosario have provided unrefuted declarations in which they aver that they are non-medical personnel. (See generally Fallen Decl., ECF No. 31-7; Rosario Decl. 31-6.) Thus, Singletary has made no showing that these defendants engaged in the type of conduct required by controlling case law to establish an Eighth Amendment medical claim of deliberate indifference.

PJG

### 4.     Respondeat Superior

Singletary also raises a claim against Assistant Warden Fallen based only on a general allegation that he was responsible for the supervision of the medical staff at FCI Edgefield and should have ordered the medical staff to perform an MRI on Singletary's foot. This claim also fails as a matter of law.

A claim based upon the doctrine of respondeat superior does not give rise to a § 1983 or Bivens claim. Monell v. Dep't of Soc. Servs., 436 U.S. 658, 691-94 (1978). "Because vicarious liability is inapplicable to . . . § 1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." Ashcroft v. Iqbal, 556 U.S. 662, 129 S. Ct. 1937, 1948 (2009). As the Iqbal Court observed, because masters do not answer for the torts of their servants in § 1983 cases, "the term 'supervisory liability' is a misnomer." Id. at 1949. Indeed, the dissent in Iqbal opined that "[l]est there be any mistake, in these words the majority is not narrowing the scope of supervisory liability; it is eliminating [] supervisory liability entirely." Id. at 1957 (Souter, J., dissenting). Moreover, even if the majority in Iqbal did not entirely dispense with the concept of liability of a supervisor in § 1983/Bivens cases, the instant Complaint fails entirely to plead facts sufficient to go forward on such a theory based on Fourth Circuit precedent. See Carter v. Morris, 164 F.3d 215, 221 (4th Cir. 1999); Shaw v. Stroud, 13 F.3d 791, 798 (4th Cir. 1994) (outlining the requirements to hold a supervisor liable for constitutional injuries inflicted by their subordinates).

### 5. Other Claim

Although Singletary mentions the Federal Tort Claims Act in his memorandum in opposition to the defendants' motion, the court finds that such a claim is not properly before the court. See, e.g., Bridgeport Music, Inc. v. WM Music Corp., 508 F.3d 394, 400 (6th Cir. 2007) (holding that a party may not expand its claims to assert new theories in response to summary judgment); White v. Roche Biomedical Labs., Inc., 807 F. Supp. 1212, 1216 (D.S.C. 1992) (noting that "a party is generally not permitted to raise a new claim in response to a motion for summary judgment").

### RECOMMENDATION

For the foregoing reasons, the record shows as a matter of law that Singletary is not entitled to the relief he seeks. Accordingly, the court recommends that the defendants' motion for summary judgment be granted. (ECF No. 31.)

January 17, 2012
Columbia, South Carolina

Paige J. Gossett
UNITED STATES MAGISTRATE JUDGE

*The parties' attention is directed to the important notice on the next page.*

**Notice of Right to File Objections to Report and Recommendation**

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Judge. Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections. "[I]n the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must 'only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation.'" Diamond v. Colonial Life & Acc. Ins. Co., 416 F.3d 310 (4th Cir. 2005) (quoting Fed. R. Civ. P. 72 advisory committee's note).

Specific written objections must be filed within fourteen (14) days of the date of service of this Report and Recommendation. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); see Fed. R. Civ. P. 6(a), (d). Filing by mail pursuant to Federal Rule of Civil Procedure 5 may be accomplished by mailing objections to:

> Larry W. Propes, Clerk
> United States District Court
> 901 Richland Street
> Columbia, South Carolina 29201

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.** 28 U.S.C. § 636(b)(1); Thomas v. Arn, 474 U.S. 140 (1985); Wright v. Collins, 766 F.2d 841 (4th Cir. 1985); United States v. Schronce, 727 F.2d 91 (4th Cir. 1984).